UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBER BALDWIN DESIGNS, LLC,                      Case No. 1:16-cv-448

      Plaintiff,                                          Judge Timothy S. Black

vs.

SILV COMMUNICATIONS, INC.,

      Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS (Doc. 16)**

This civil action is before the Court on Defendant's motion to dismiss (Doc. 16)

and the parties' responsive memoranda (Docs. 19, 22).

Plaintiff's amended complaint asserts claims on behalf of a nationwide class and

Ohio subclass for: (1) violation of the Federal Telecommunications Act's anti-slamming

provision; (2) common law fraud; (3) unjust enrichment; and (4) Ohio Tele-

communication Fraud. Defendant has moved to dismiss the amended complaint on

several grounds.

## I.    FACTS <u>AS ALLEGED</u> BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in

the light most favorable to the Plaintiff; and (2) take all well-pleaded factual allegations

as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

In or about May 2014, Plaintiff contracted with Cincinnati Bell to establish

telephone service at its store. (Doc. 14 at ¶ 15). Plaintiff, a business managed and

operated by Ms. Kimber Baldwin, agreed to pay a flat monthly fee of $126.33 for two

business telephone lines to the store, which included free, unlimited long distance calls. (*Id.* at ¶ 16).  In or around August 2014, Defendant initiated an inbound telephone call to Plaintiff, which was answered by Plaintiff's employee, Corrine Edinger.  (*Id.* at ¶ 17). The caller allegedly falsely indicated that the purpose of the call was to confirm details regarding the business for inclusion in an unspecified "directory."  (*Id.*)

The caller asked Ms. Edinger to confirm the name, address, and telephone number of the business, which she did.  (Doc. 14 at ¶ 18).  The caller then repeated back the business details and asked Ms. Edinger to confirm the accuracy of the information.  (*Id.*) Ms. Edinger replied, "Yes" to each question.  (*Id.* at ¶ 19).  The caller then asked Ms. Edinger to provide personal information, including her date of birth and Social Security number.  (*Id.* at ¶ 20).  Although Ms. Edinger provided her date of birth, she declined to disclose her Social Security number and ended the telephone call.  (*Id.*)

Plaintiff received a telephone bill from Cincinnati Bell dated October 8, 2014, which contained unauthorized charges from Defendant in the total amount of $40.94. (Doc. 14 at ¶¶ 24-25).  Plaintiff did not notice the new charges and paid the October 8, 2014 invoice via check dated October 27, 2014.  (*Id.* at ¶ 26).  Plaintiff received another telephone bill from Cincinnati Bell dated November 8, 2014, which similarly contained unauthorized charges from Defendant in the amount of $40.94.  (*Id.* at ¶ 27).

Noticing the new and unauthorized charges for the first time, Ms. Baldwin called a phone number listed on the bill under the heading "Third Party Telecom Billing" on or about November 18, 2014, and requested that the long distance charges be removed.

2

(Doc. 14 at ¶ 28). Defendant's representative allegedly told Plaintiff that it would remove the charges and that no further charges would be added. (*Id.* at ¶ 29). In reliance on Defendant's representation, Plaintiff paid the full amount of the November 8, 2014 invoice and took no further immediate action to change carriers. (*Id.* at ¶ 30).

When Plaintiff received its next telephone bill from Cincinnati Bell dated December 8, 2014, it again contained charges from Defendant in the amount of $40.94, despite Defendant's representation on or about November 18, 2014, that it would not include the charge going forward. (Doc. 14 at ¶¶ 33-34). Frustrated by the continuing improper charges, Ms. Baldwin called Cincinnati Bell for assistance with removing the charges. (*Id.* at ¶ 35). A Cincinnati Bell representative told Ms. Baldwin that it could take up to sixty days to remove the improper charges from the account. (*Id.* at ¶ 36). By check dated December 17, 2014, Plaintiff paid the full amount of the December 8, 2014 invoice, including the improper charges. (*Id.* at ¶ 37). Despite Defendant's previous representation that it would remove all charges and discontinue service to Plaintiff's account, Plaintiff received invoices from Cincinnati Bell dated January 8, 2015 and February 8, 2016 that again contained charges in the amount of $40.94. (*Id.* at ¶¶ 38-39).

Ms. Baldwin called Cincinnati Bell a second time in February 2015 seeking help removing the fraudulent charges. (Doc. 14 at ¶ 40). Cincinnati Bell told Ms. Baldwin that the only relief it could offer was to place a "block" on Plaintiff's telephone lines, but no effective "block" was ever placed on the line to prevent further fraudulent charges by Defendant. (*Id.* at ¶ 41).

3

Ms. Baldwin called Defendant again on or about February 19, 2015. (Doc. 14 at ¶ 42). During that call, Ms. Baldwin informed Defendant that they had "slammed" Plaintiff in violation of federal law, that it had previously unsuccessfully demanded the removal of all charges from its bill on numerous occasions, and that Defendant must immediately return its service to Cincinnati Bell. (*Id.* at ¶ 43). In response, Defendant's representative stated that it had obtained proper consent to switch the long distance telephone service and played a recording that it alleged was a conversation between Defendant and Ms. Edinger. (*Id.*) Instead of playing the actual conversation—which mostly consisted of Defendant's representatives requesting verification of publicly-available identification information about the business for purposes of updating an unspecified "directory"— Defendant played an audio file featuring a male voice reading a series of long, scripted questions at very high rate of speed, which rendered the questions largely unintelligible. (*Id.* at ¶ 44). Most of the questions called for a yes or no answer, after which the voice of Ms. Edinger would abruptly interject, "Yes," in a stilted, unnatural, and robotic fashion. (*Id.*) Plaintiff claims that the recording actually contained replays of the same recorded "Yes" over and over again. (*Id.*)

Despite Plaintiff's request for termination of service during the February 19, 2015 call, Defendant continued to charge Plaintiff. (Doc. 14 at ¶ 50). Plaintiff's next phone bill from Cincinnati Bell dated March 8, 2015 again contained charges of $40.94 from Defendant. (*Id.* at ¶ 51). In March 2015, Plaintiff paid, via electronic funds transfer, the February and March 2015 invoices from Cincinnati Bell, both of which contained

4

charges from Defendant. (*Id.* at ¶ 52). It was not until April 8, 2015, that the Defendant's charges did not appear on the invoice. (*Id.* at ¶ 54). Defendant never reimbursed or offered to reimburse Plaintiff for the overcharges. (*Id.* at ¶ 55).

Plaintiff maintains that Defendant's conduct is not an isolated incident. (Doc. 14 at ¶ 56). Public records reveal a large volume of complaints about Defendant alleging the same basic fact pattern. (*Id.* at ¶ 57). In fact, Defendant has an "F" rating with the Better Business Bureau. (*Id.* at ¶ 61).[1] Plaintiff also cites numerous examples of complaints posted online or with the Ohio Attorney General demonstrating that Defendant made a nationwide practice of unlawful slamming. (*Id.* at ¶¶ 60-65).

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] *See, e.g.,* Doc. 14 at ¶ 62(a) (Better Business Bureau complaint dated May 27, 2016: Silv "played a recording that was fake. All yes answers were the same, they were spliced into the recording"); *Id.* at ¶ 62(b) (Better Business Bureau complaint dated April 17, 2015: "they replayed a recording that was obviously a fake … if you listen closely all of the 'yes' answers are the same").

544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

## III.    ANALYSIS

### A.   Allegations in Plaintiff's Original Complaint

Defendant contends that Plaintiff is bound by the original allegations in the complaint as "judicial admissions" and therefore cannot rely on the "new and contradictory" allegations in the amended complaint. "[U]nder federal law, stipulations

6

and admissions in the pleadings are generally binding on the parties and the Court. Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well." *Ferguson v. Neighborhood Hous. Servs.*, 780 F.2d 549, 551 (6th Cir. 1986).

Plaintiff filed its original complaint on April 4, 2016. It alleged that "Silv or its agent contacted Plaintiff purporting to verify a telephone number" and "[u]sing information obtained in the call, …caused Plaintiff's long distance provider to be changed to Silv by falsely representing that Plaintiff had consented to the change in violation of [federal law]." (Doc. 1 at ¶ 1). Later in the complaint, Plaintiff alleged that Silv "solicited Plaintiff to switch its long distance provider from Cincinnati Bell to Silv" but that "Plaintiff did not authorize Silv to switch services." (*Id.* at ¶¶ 12, 14).

After filing suit, Plaintiff continued to investigate the claims. Ms. Baldwin analyzed her paperwork in order to recreate a detailed timeline of events that included Plaintiff's various communications with Silv and Cincinnati Bell. Plaintiff also interviewed Corrine Edinger, the employee who actually received the original incoming call from Silv. (Doc. 1 at ¶ 17). Ms. Edinger allegedly provided Plaintiff more detailed information about the nature of the initial call (*i.e.*, to collect information for an unspecified "directory"). (*Id.* at ¶¶ 17-22). Plaintiff's investigation also uncovered numerous complaints posted online by other victims describing similar treatment by Silv. (*Id.* at ¶¶ 56-65). Plaintiff included this newly discovered information in its amended complaint.

7

The Court finds that there is nothing contradictory between Plaintiff's original allegation that Defendant called to "verify a telephone number" and Plaintiff's amended allegation that Defendant called to "confirm details" for inclusion in a "directory." Although the amended complaint replaced its previous allegation that Defendant "solicited Plaintiff to switch its long distance" with the allegation that "[a]t no time during the call did the caller inform Plaintiff that the purpose of the call was to obtain consent to switch Plaintiff's long distance" (Doc. 14 at ¶ 23), this change appears to be the result of new information obtained from Ms. Edinger.

Defendant also takes issue with the amended complaint's description of a call that Plaintiff originally alleged took place "on or about" November 18, 2014. In the original complaint, Plaintiff alleged that "[u]pon realizing that she had been 'slammed,' on or about November 18, 2014, Ms. Baldwin requested proof of verification or consent to the order to switch from Silv." (Doc. 1 at ¶ 18). Plaintiff alleged that during that call Defendant played a fabricated recording purporting to contain Plaintiff's consent. (*Id.* at ¶¶ 18-22). In the amended complaint, Plaintiff alleges that the same call took place, but that it took place a few months later, "on or about February 19, 2015." (Doc. 14 at ¶¶ 42-49). The original complaint only contained allegations about the single call featuring the fabricated recording, but the amended complaint describes an entire series of communications between Plaintiff and Silv and/or Cincinnati Bell that took place between November 18, 2014 and February 19, 2015, which culminated with the call in which Silv played the fabricated recording. (*Id.* at ¶¶ 28-50). With the exception of the

8

approximate date of one call, there is nothing inconsistent between the allegations in the original complaint and the amended complaint.

Even if Plaintiff's amended allegations were fundamentally inconsistent with the original allegations, "[f]actual assertions in pleadings…, *unless amended*, are considered judicial admissions conclusively binding on the party who made them." *Kay v. Minacs Grp. (USA), Inc*., 580 F. App'x 327, 331 (6th Cir. 2014) (emphasis added). Because the complaint was amended, Plaintiff is not bound by the original allegations.

### B.  Proper Forum

Next, Defendant maintains that "the proper forum for subscribers' slamming complaints is the Federal Communications Commission ("FCC"). Defendant argues that the Court does not have subject matter jurisdiction over Plaintiff's Telecommunications Act claim because "there exists a ready mechanism for resolving these matters through the FCC."

Congress amended Section 258 of the Communications Act of 1934 to prohibit "slamming," the practice in which a telecommunications carrier switches a consumer's telephone service without the consumer's consent. It provides:

(a) Prohibition

*No telecommunications carrier shall submit or execute a change in a subscriber's selection of a provider* of telephone exchange service or telephone toll service *except in accordance with such verification procedures as the Commission shall prescribe.* Nothing in this section shall preclude any State commission from enforcing such procedures with respect to intrastate services.

(b) Liability for charges

*Any telecommunications carrier that violates the verification procedures* described in subsection (a) of this section and that collects charges for telephone exchange service or telephone toll service from a subscriber *shall be liable to the carrier previously selected by the subscriber in an amount equal to all charges paid by such subscriber after such violation,* in accordance with such procedures as the Commission may prescribe. *The remedies provided by this subsection are in addition to any other remedies available by law.*

47 U.S.C. § 258 (emphasis added).

Focusing on the "shall be liable to the carrier previously selected" language of Section 258(b), Defendant argues that "the regulatory scheme and the Act itself create a private right of action only for the authorized carrier against the unauthorized carrier." However, two different federal courts have considered Defendant's argument and both found that subscribers injured by slamming may pursue a Section 258 claim against the slamming carrier. *Valdes v. Qwest Commc'ns Int'l., Inv*. 147 F.Supp.2d 116 (D. Conn. 2001); *Comy. Voice Line, LLC v. Great Lakes Comm. Corp.*, 18 F.Supp.3d 966 (N.D. Iowa 2014). These courts found that Congress' intent to provide a private right of action to aggrieved consumers was clear in Sections 206 and 207. Section 206 provides:

*In case any common carrier shall do*, or cause or permit to be done, *any act, matter, or thing in this chapter prohibited or declared to be unlawful*, or shall omit to do any act, matter, or thing in this chapter required to be done, *such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained* in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

47 U.S.C. § 206 (emphasis added). Section 207, in turn, provides:

> *Any person claiming to be damaged* by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or *may bring suit* for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, *in any district court of the United States of competent jurisdiction*; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207 (emphasis added).

The FCC has also held that subscribers may pursue a Section 258 claim against a slamming carrier. *See In Re Implementation of Subscriber Carrier Selection Changes Provisions of Telecomm. Act of 1996*, 15 F.C.C. Rcd. 8158, 8167 (2000) ("[Section 258(b)] specifically provides that this remedy is 'in addition to any other remedies available at law.' *One such remedy that assuredly is available is the ability of consumers to bring a claim … in federal court* … for damages due to slamming. For example, pursuant to sections 206-208 of the Act, a consumer bringing a complaint is entitled to actual and consequential damages following a finding of a slam. [47 U.S.C. §§ 206-208].") (emphasis added).

Defendant cites two cases: *Conboy v. AT&T Corp.*, 241 F.3d 242, 253 (2nd Cir. 2001) and *McEwen v. Sourceresources.com*, No. H-06-2530, 2007 U.S. Dist. LEXIS 10156, at *9-10 (S.D. Tex. Feb. 13, 2007), for the proposition that the regulatory scheme and the Act itself create a private right of action only for the authorized carrier against the unauthorized carrier. However, unlike the present case, neither *Conboy* nor *McEwen* involves claims under Section 258. Additionally, neither case addresses whether the Act

11

creates a private right of action only for the authorized carrier, not slamming victims like Plaintiff.

Accordingly, the Court has subject matter jurisdiction over Plaintiff's Telecommunications Act claim.

### C.   Telecommunications Act Claim

Next, Defendant claims that the FCC and federal courts have held that it is improper to base a class action lawsuit on a violation of the Telecommunications Act. However, nothing in any of the cases cited by Defendant (*Boomer*, *Hi-Tech Furnace*, or *Krauss*), purports to limit the application of Rule 23 in federal court proceedings. To the contrary, numerous class actions asserting claims under the Telecommunications Act have been certified. *See, e.g., Beattie v. Centurytel, Inc.*, 511 F.3d 554 (6th Cir. 2008) (certifying class of customers asserting claims under Sections 206 and 207 of the Act).

Accordingly, Plaintiff can base a class action lawsuit on a violation of the Telecommunications Act.

### D.   Unjust Enrichment Claim

Defendant claims that Ohio's Voluntary Payment Doctrine prevents Plaintiff's recovery under an unjust enrichment theory. "In the absence of fraud, duress, compulsion, or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D. Ohio 2003). In other words, "money voluntarily

paid by one person laboring under a mistake of fact to another person who claims the right to such payment is generally recoverable, but money voluntarily paid as a result of a mistake of law is not." *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 F. App'x 379, 389 (6th Cir. 2014). "Simply stated, a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Id.*

However, Plaintiff alleges that Defendant procured its payments through fraud, an explicit exception to the doctrine. *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio Aug. 20, 2003) (*citing Stone v. Mellon Mortg. Co.*, 771 So. 2d at 458 (Ala. 2000) ("The rule by which the law denies one a recovery for a voluntary payment is subject to an exception where the payment has been procured by a fraud.")). Specifically, Plaintiff feared that non-payment would result in disconnection of services. Since Plaintiff's allegations must be accepted as true for purposes of this motion, Defendant's motion to dismiss the unjust enrichment claim is denied.[2]

---

[2] *See, e.g., Nelson v. Am. Power & Light*, 2:08cv549, 2010 U.S. Dist. LEXIS 82777, at *39 (S.D. Ohio Aug. 12, 2010) ("[T]he Court agrees with Ms. Nelson that it is premature to conclude, based simply upon the pleadings and the electric bills submitted by APL, that Ms. Nelson had full knowledge of the facts surrounding the addition of charges for attorneys' fees and costs to her electric bill."); *Arlington Video Prods. v. Fifth Third Bancorp*, No. 2:08cv122, 2008 U.S. Dist. LEXIS 51196, at *18 (S.D. Ohio May 1, 2008) ("While Defendant may ultimately be able to establish a viable defense to Plaintiff's claims through the voluntary payment doctrine, it is premature to dismiss Plaintiff's claims pending further factual development of the record.").

### E.   Fraud Claim

Plaintiff alleges that Defendant's conduct constitutes telecommunications fraud under the Ohio Telecommunications Fraud statute, Ohio Revised Code Section 2913.05.[3] Defendant argues that Plaintiff cannot seek civil recovery for an alleged uncharged criminal act.  However, the plain language of Ohio Revised Code Section 2307.60 ("Civil action or damages for criminal act") provides otherwise.  In relevant part, it provides that "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law…"  Ohio Rev. Code § 2307.60(A)(1).  Although Section 2307.60 requires a person to prove "injury" resulting from a "criminal act," it does not require that the person identify or invoke some other statutory or common law civil claim.

The cases that Defendant cites for the proposition that Section 2307.60 does not create a civil cause of action for a criminal statute address Ohio Revised Code 2307.60's predecessor, Ohio Revised Code 1.16, which was a codification of the common law that a civil action does not merge into a criminal prosecution.  *Schmidt v. State Aerial Farm Statistics, Inc.*, 403 N.E.2d 1026, 1027 (Ohio App. 1978).  However the version of Ohio Revised Code 1.16 at issue in *Schmidt* stated that "[a]ny one injured in person or property

---

[3] Ohio Revised Code Section 2913.05 provides that "[n]o person having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud…Whoever violates this section is guilty of telecommunications fraud."

by a criminal act may recover full damages in a civil action, unless specifically excepted by law." *Id.* The language that appears in the current version of Ohio Revised Code Section 2307.60(A)(1) is even more specific: "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action…" *Id.* In fact, in *Jacobson v. Kaforey*, 39 N.E.3d 799, 805-06 (Ohio App. 2015), the court explained that the plain language of the statute indicates that a civil action for damages caused by criminal acts is available unless otherwise prohibited by law. *Id.* at 805.[4] Accordingly, Plaintiff can seek civil recovery for telecommunications fraud.

Defendant also argues that Plaintiff fails to plead fraud with sufficient particularity.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). The test is whether the complaint places the defendant on "sufficient notice of misrepresentation, allowing the defendants to answer,

---

[4] *See also Wesaw v. City of Lancaster*, No. 2:2005cv0320, 2005 U.S. Dist. LEXIS 36691, at *18-19 (S.D. Ohio Dec. 15, 2005) ("Defendants contend 'the language of the statute merely provides that victims of crime may bring an action for damages and attorney fees if authorized by a specific statute or the common law.' Defendants misstate the thrust of the current statute. Under the current version of Ohio Rev. Code § 2307.60(A), a civil action arises from a criminal act that has caused damage unless such an action has been 'specifically excepted by law.' Defendants have not shown that plaintiffs' claims under Ohio Rev. Code § 2931.45 are specifically excepted by law.").

15

addressing in an informed way plaintiffs [sic] claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993).

In the amended complaint, Plaintiff alleges that "Silv committed at least three separate and distinct acts of fraud upon Plaintiff." (Doc. 14 at ¶ 98). Plaintiff proceeds to describe each incident of fraud in significant detail. (*Id.* at ¶¶ 99-110). For example, with respect to the first incident Plaintiff states:

> First, in or about Summer 2014, Silv knowingly misrepresented the nature of its business and the nature of its inquiry as being related to an unspecified 'directory.' The true purpose of the call was to collect information about Plaintiff's identity and to record Plaintiff's affirmative responses in order to use that information to fraudulently switch Plaintiff's long distance telephone services. Defendant made its misrepresentation with intent to mislead Plaintiff.

(*Id.* at ¶ 99). "Plaintiff reasonably relied on Silv's misrepresentation that the information it sought was for an unspecified directory and would not have provided it if Silv had informed Plaintiff of its intention to switch Plaintiff's long distance telephone service." (*Id.* at ¶ 101).

Accordingly, the Court finds that Plaintiff pled fraud with the requisite particularity. Specifically, Defendant is on sufficient notice of the alleged fraudulent behavior.

### F. Damages

Finally, Defendant contends that the Court should dismiss the amended complaint because Plaintiff fails to adequately allege damages.

16

First, Defendant argues that Plaintiff does not allege that it failed to provide long distance service in exchange for Plaintiff's payment of monthly fees, or that the service provided was defective. However, Plaintiff's claims do not arise from Defendant's failure to provide functional telephone service, but rather Defendant's switching of Plaintiff's service without authorization, which resulted in Plaintiff being charged rates that "far exceed the market price for equivalent services." (Doc. 14 at ¶ 5). Defendant also criticizes Plaintiff for failing to "allege facts showing that the charged price was unreasonable for the service provided," but cites no authority requiring Plaintiff to include such details. Regardless, Plaintiff alleges that it effectively received free long distance service prior to being slammed by Defendant because long distance service was included in Plaintiff's base telephone plan. (*Id.* at ¶ 16). Therefore, any fee charged by Defendant would necessarily result in damages for Plaintiff.

Defendant also contests Plaintiff's allegation that "[a]t no point did [Silv] refund any monies to Plaintiff…." (Doc. 14 at ¶ 116). Defendant points to the fact that two of the six monthly invoices attached to Plaintiff's complaint reflect a "Current Adjustment" credit in the amount of $43.71. (*See* Doc. 14-6 at PAGEID 193; Doc. 14-7 at PAGEID 197). Presuming that the "Current Adjustments" are "refund[s] … of Silv charges," Defendant argues that Plaintiff failed "to allege what specific amount it paid over and above these refunded amounts, and whether the net amount paid is more than Plaintiff would have paid Cincinnati Bell for similar services absent the switch…., or whether its

net payment is more than the value of the unlimited long distance service it received."
(Doc. 16 at 6).

First, it is not clear from the face of the invoices that the "Current Adjustments" credits are refunds of Defendant's charges.  Second, even if the credits were refunds from Defendant, that does not mean Plaintiff has no damages because the credits only appear on two of the six invoices.  Third, Defendant's argument that Plaintiff fails to allege the "specific amount" it paid over and above the refunds ignores the fact that Plaintiff is not required to plead damages with such detail.

The complaint clearly alleges that Plaintiff has been damaged in an amount equal to the difference between what Plaintiff paid for long distance service prior to being slammed—effectively nothing, since long distance service was included within Plaintiff's base telephone plan—and the excessive fees Defendant charged Plaintiff thereafter. Accordingly, Plaintiff has adequately alleged damages.

## IV.   CONCLUSION

For these reasons, Defendant's motion to dismiss (Doc. 16) is **DENIED**.

**IT IS SO ORDERED**.

Date:  12/5/16                                          *s/ Timothy S. Black*
                                                       Timothy S. Black
                                                       United States District Judge

18